IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| DONALD TIMMER,<br><br>               Plaintiff,<br><br>vs.<br><br>JAMSCO, INC., CERTIFIED<br>CONTRACTORS SUPPLY, LLC, and<br>DOES 1–10,<br><br>               Defendants. | CV 25–51–BU–DWM<br><br><br><br>OPINION<br>and ORDER |

On May 21, 2025, Plaintiff Donald Timmer filed a civil rights complaint under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), alleging his rights were violated by several private parties when he was terminated from his employment based on allegations of a sex crime he did not commit. (Doc. 1.) He further alleged that his termination violated Montana statutory and common law. (*See id.*) On August 29, 2025, Defendants Stacy Siegal, Scott Siegal, and Jamsco, Inc. filed motions to dismiss. (Docs. 8, 10.) No other defendants appeared in the case and Timmer did not respond to either motion or file proof of service for any other defendants. Accordingly, on October 17, 2025, Timmer was ordered to respond and provide proof of service for the remaining defendants. (Doc. 14.) Because Timmer's responses indicated that he

1

intended to amend and voluntarily dismiss most of his claims and defendants,
(Docs. 15, 16), the pending motions to dismiss were granted with leave to amend,
(Doc. 19).

On October 29, 2025, Timmer filed his First Amended Complaint. (Doc.
20.) That pleading alleged a single cause of action for statutory wrongful
discharge from employment and named only two defendants, Jamsco and Certified
Contractors Network, LLC. (*Id.*) However, on November 7, 2025, Timmer sought
leave to amend again on the basis that he should have named Certified Contractors
Supply, LLC instead of Certified Contractors Network, LLC. (Doc. 22.) Leave
was granted, (Doc. 23), and on November 20, 2025, Timmer filed a Second
Amended Complaint naming only Defendants Jamsco, Certified Contractors
Supply, LLC, and Does 1–10 and alleging a single cause of action for wrongful
discharge from employment under Montana law. (Doc. 24.)

On December 1, 2025, Jamsco answered. (Doc. 30; *see* Doc. 31.) On
December 18, 2025, Certified Contractors Supply filed a motion dismiss for lack
of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil
Procedure. (Doc. 32.) Timmer responded, arguing the motion does not comply
with the Local Rules, improperly seeks summary judgment, and "is inappropriate
and based on numerous mis[]statements and misrepresentations of both fact and
law." (Doc. 34 at 1–3.) Timmer further indicated he intended to file a Third

2

Amended Complaint and "motion for summary judgment against Certified

Contractors Network (Doe Number 1) and Mr. Seagal (Doe Number 2),"[1] (*id.* 3–4),

neither of whom are a currently named defendant in the case.

A motion hearing was held on January 16, 2026. (Doc. 35.) The morning of

the hearing, Timmer filed a motion for entry of default against Certified

Contractors Network, (Doc. 36), and a motion for leave to file a third amended

complaint, (Doc. 37). At the hearing, both parties argued the pending motions and

Timmer testified.

ANALYSIS

Based on the written submissions of the parties and the arguments and

testimony presented at the January 16 hearing, Certified Contractor Supply's

motion to dismiss is granted, Timmer's motion for default is denied, and Timmer's

motion for leave to amend is granted in part and denied in part. Timmer may

proceed against Jamsco and Siegal in this forum, and amend his pleading as to

those defendants. No further amendments are permitted.

## I.    Personal Jurisdiction

Challenges to personal jurisdiction may be brought under Rule 12(b)(2) of

the Federal Rules of Civil Procedure. "Where a defendant moves to dismiss a

complaint for lack of personal jurisdiction, the plaintiff bears the burden of

---

[1] It appears that "Siegal" is the proper spelling, despite references to "Seagal."

demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When that motion is based entirely on written materials, rather than an evidentiary hearing, a "plaintiff need only make a prima facie showing of jurisdictional facts."[2] *Id.* (internal quotation marks omitted). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations must be taken as true." *Id.* (internal quotation marks omitted). In other words, courts do not "assume the truth of allegations in a pleading which are contradicted by affidavit." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (internal quotation marks omitted). However, "conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (internal quotation marks and alteration omitted). Consistent with this standard, the facts here are taken from Timmer's Second Amended Complaint, (Doc. 24), the Declaration of Scott Siegal, (Doc. 33-1), and Timmer's January 16 testimony. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

---

[2] Notably, once an evidentiary hearing is held, the plaintiff must show the existence of personal jurisdiction by a preponderance of the evidence. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Because Timmer fails to meet the lesser "prima facie" burden, this heightened standard has not been applied here.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). In Montana, courts apply a two-step test to determine whether they have personal jurisdiction over a nonresident defendant. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015). First, courts consider whether personal jurisdiction exists under Montana's long-arm statute, Rule 4(b)(1) of the Montana Rules of Civil Procedure. Rule 4(b)(1) subjects parties to general jurisdiction if they are "found within the state of Montana" and to specific jurisdiction "as to any claim for relief arising from the doing personally, or through an employee or agent, of" certain enumerated acts. Mont. R. Civ. P. 4(b)(1). Second, courts consider whether the exercise of personal jurisdiction comports with due process. *Milky Whey*, 342 P.3d at 17. Due process "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). "The defendant . . . must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 359 (internal quotation marks and alterations omitted). "Accordingly, exercising

specific personal jurisdiction over a defendant is only appropriate when both the defendant and the underlying controversy are appropriately affiliated with Montana." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 443 P.3d 407, 412 (Mont. 2019).

Certified Contractors Supply argues that it is neither found within Montana nor has sufficient minimal contacts with Montana to support a finding of specific personal jurisdiction or show that the exercise of jurisdiction would comport with due process. Timmer argues that such jurisdiction exists because Certified Contractors Supply was Timmer's employer for thirteen years and Timmer resided within Montana during that time. Ultimately, because Certified Contractors Supply's only contacts with Montana were the result of Timmer's residence there, Certified Contractors Supply is correct that neither Montana's long-arm statute nor due process support a finding of personal jurisdiction.

### A.    Montana Rule 4(b)(1)

Timmer fails to present a prima facie case of the existence of either general or specific jurisdiction under Montana's long-arm statute.

#### 1.    General Jurisdiction

The only jurisdictional facts in the Second Amended Complaint are that:

1.    Plaintiff Donald "Troy" Timmer is a citizen and resident of Gallatin County, Montana and has resided in Gallatin County during all times relevant to this complaint.

6

> 2.    Jamsco, Inc. and Certified Contractors Supply, LLC and DOES
> 1–10 are business organizations are persons and/or business
> organizations who reside in States other than Montana and or/whose
> principal place(s) of business is/are in a States other than Montana.

(Doc. 24 at ¶¶ 1–2 (errors in original).)  A defendant is "found within" the state if it

is "physically present" there or its "contacts with the state are so pervasive that [it]

may be deemed to be physically present there."  *Bi-Lo Foods, Inc. v. Alpine Bank*,

955 P.2d 154, 157 (Mont. 1998) (internal quotation marks omitted).  As plead,

Certified Contractors Supply is not "found within the state of Montana" so as to

give rise to general jurisdiction.  *See* Mont. R. Civ. P. 4(b)(1).  Additionally,

Certified Contractors Supply has filed the declaration of Scott Siegal, its President,

stating that the company is incorporated under the laws of Delaware, (Doc. 33-1 at

¶ 4), and its principal place of business is in Maryland, (*id.* ¶ 5).  Accordingly,

there is no general jurisdiction over Certified Contractors Supply.

## 2.    Specific Jurisdiction

Montana extends specific jurisdiction "to any claim for relief arising from

the doing personally, or through an employee or agent, of any" of the following

enumerated acts:

> (A) the transaction of any business within Montana;
> (B) the commission of any act resulting in accrual within Montana of
> a tort action;
> (C) the ownership, use, or possession of any property, or of any
> interest therein, situated within Montana;
> (D) contracting to insure any person, property, or risk located within
> Montana at the time of contracting;

    (E)   entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;

    (F)   acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana; or

    (G)   acting as personal representative of any estate within Montana.

Mont. R. Civ. P. 4(b)(1). Timmer provides few facts to flesh out conduct that would give rise to jurisdiction under these provisions. Stated in their entirety, the relevant facts in the Second Amended Complaint are as follows:

> 4. On or about January 23 of 2013, Plaintiff Troy Timmer entered into a contractual and/or employment arrangement with Defendants Jamsco, Inc. and Certified Contractors Supply, LLC.

> 5. Under this arrangement, the parties agreed that Timmer would work for Defendants and/or others in exchange for a guaranteed salary, a commission based on Timmer's ability to bring in new customers and business and other benefits, including profit sharing, a 401(k), travel *per diem*, health insurance and paid time off for medical, vacation and personal reasons.

> 6. On or about Friday, September 27, 2024, Plaintiff was wrongfully terminated from his employment with Defendants.

(Doc. 24 at ¶¶ 4–6.) Timmer testified to some additional facts at the January 16 hearing. According to Timmer, who owned his own roofing company in Montana, he first learned about Certified Contractors Supply[3] when he went to an industry

---

[3] The January 16 hearing revealed some defugalty about whether Timmer was employed by Certified Contractors Network or Certified Contractors Supply. Timmer testified that the employer listed on his W-2 from 2013 to 2023 was Certified Contractors Supply but that in 2024, the employer name changed to Certified Contractors Network. Timmer further testified that despite the contents of his tax documents, he always believed he worked for Certified Contractors

event in Las Vegas. He was then a member of Certified Contractors Supply for

approximately four years before he decided to wind up his own business and was

approached by Siegal to take a position with Certified Contractors Supply in the

fall of 2012. In January 2013, Timmer met Siegal at another event in California,

where they discussed the terms of his employment and signed his employment

contract. He was permitted to live in Bozeman, expected to work remotely, and

required to travel to in-person trainings, conferences, and events nationwide.

Certified Contractors Supply furnished him with a cell phone and a computer and

paid all his travel and other business-related expenses. According to Timmer,

while he did not conduct any in-person trainings in Montana, he regularly led

phone trainings and, after the COVID pandemic, conducted at least 100 Zoom

trainings from his home office. Timmer concedes, however, that no one from

Certified Contractors Supply came to Montana and no other employees were based

in Montana.

Much of this information aligns with that provided by Siegal in his

declaration. According to Siegal, Certified Contractors Supply conducts no

---

Network and he had not heard of Certified Contractors Supply. Counsel for
Certified Contractors Supply confirmed that "Certified Contractors Network" is a
d/b/a for "Certified Contractors Supply." While the exact relationship between
these entities remains unclear, for the purposes of this motion, the conduct of both
companies is considered in resolving whether there were sufficient minimal
contacts between Timmer's employer and the forum state of Montana. To avoid
further confusion, that employer is referred to as Certified Contractors Supply.

business in Montana, (Doc. 33-1 at ¶ 7), it is not registered with the Montana Secretary of State, (*id.* ¶ 8), it has never had an office in Montana, (*id.* ¶ 9), it "has no clients or customers in Montana and has never considered or developed a plan to generate work or customers in the State," (*id.* ¶ 10; *see id.* ¶ 24), it does not advertise in Montana, (*id.* ¶ 11), it does not have any property in Montana, (*id.* ¶ 12), it does not contract to insure any person in Montana, (*id.* ¶ 13), it has never entered into a contract for services to be rendered in Montana, (*id.* ¶ 14), it does not have any accounts in Montana, (*id.* ¶ 15), and all its files are stored in the cloud, which is based out of its main office in Maryland, (*id.* ¶ 16). As it relates to Timmer, he is neither an owner or a manager of the company, (*id.* ¶ 19), and his role as Performance Coach and Trainer did not involve the conducting of business or conferences in Montana or the solicitation of business in Montana, (*id.* ¶¶ 20, 22). While Timmer held a few trainings remotely over Zoom during the COVID pandemic, he subsequently "resumed in-person training, all at locations outside Montana." (*Id.* ¶ 21.) Timmer also briefly oversaw salespersons located in other forums—New York and Texas. (*Id.* ¶ 23.) Certified Contractors Supply allowed Timmer to work from Montana based on Timmer's preference but it "received no benefit from Timmer's choice to live in Montana." (*Id.* ¶¶ 25–26.) Finally, Timmer was terminated during a phone call with the company in Maryland based on an incident that occurred at an event in Kentucky. (*Id.* ¶¶ 29–31.)

While Timmer does not identify which provisions of Montana Rule 4(b)(1) may give rise to personal jurisdiction, the most likely candidates are discussed, and rejected, below.

### a.   Transacting Business in Montana

Specific jurisdiction could exist if Timmer's claims arose from Certified Contractors Supply's "transaction of any business within Montana." Mont. R. Civ. P. 4(b)(1)(A). The factors that show a defendant was transacting business within Montana are the same as the factors that would support a finding of general jurisdiction—albeit to a less exacting standard. *Milky Whey*, 342 P.3d at 18. These factors include the defendant's "local negotiations for various types of commercial transactions, the solicitation of business within the state, prior litigations in the forum, the presence of agents in the state, and the existence of ongoing contractual relationships with residents of the forum state." *Id.* (quoting 4A Wright & Miller, § 1069.3 at 156–61). As outlined above, there are no facts showing Certified Contractors Supply engaged in activities consistent with the transaction of business within the state. Timmer fails to contradict Siegal's assertion that Certified Contractors Supply never solicited business within Montana, negotiated locally to further its business in Montana, or had any clients,

financial accounts, or other contractual relationships with Montanans, other than
those directly linked to Timmer's remote employment in Montana.[4]

The only argument Timmer makes that arguably fits into this category of
conduct is that Certified Contractors Supply "was listed as Troy Timmer's
employer with the Montana Department of Revenue and the Internal Revenue
Service for twelve of the thirteen years" of Timmer's employment.  (*See* Doc. 34 at
2.)  But this speaks to Timmer's conduct, not that of Certified Contractors Supply;
it was Timmer who chose where to file his taxes.

Timmer fails to present a prima facie case that Certified Contractors Supply
transacted business in Montana.

### b.     Accrual of a Tort in Montana

Specific jurisdiction could exist if Timmer's claims arose based on "the
commission of any act resulting in accrual within Montana of a tort action."  Mont.
R. Civ. P. 4(b)(1)(B).  The test for "whether a tort accrued in Montana is highly-
fact specific and dependent on the nature of the alleged tort at issue."  *Groo v.
State Eleventh Judicial Dist. Court*, 537 P.3d 111, 119 (Mont. 2023) (holding that
a tort accrued in Montana when a New York social media user directed a negative
campaign at a Montana business and its customers).  The inquiry "focuse[s] on

---

[4] At the hearing, Timmer's counsel alluded to the fact that Certified Contractors
Supply provided direct training and other services to Montana roofers and
contractors.  He presented no evidence of such conduct.

12

where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Tackett v. Duncan*, 334 P.3d 920, 928 (Mont. 2014). "[J]urisdiction is not acquired through interstate communications solely by signing a contract to be performed in another state." *Groo*, 537 P.3d at 118; *see also Cimmaron Corp. v. Smith*, 67 P.3d 258, 261 (Mont. 2003) ("[I]nterstate communication is an almost inevitable accompaniment to doing business in the modern world, and cannot by itself be considered a 'contact' for justifying the exercise of personal jurisdiction."); *Threlked v. Colorado*, 16 P.3d 359, 364–65 (Mont. 2000) (finding no long-arm jurisdiction existed where the defendants' interstate communications related entirely to services to be performed out-of-state); *Bird v. Hiller*, 892 P.2d 931, 934 (Mont. 1995) (finding no personal jurisdiction over Idaho attorney that had communicated with his clients in Montana about their claims arising out of an automobile accident that occurred in Idaho).

This Court's decision in *Isakson v. Roberts Markel Weinberg Butler Hailey PC*, provides useful guidance here. 2024 WL 1533957 (D. Mont. Apr. 9, 2024). In *Isakson*, the plaintiff sued a Texas law firm for wrongful termination after his remote position was ended over the phone. *Id.* at *2. That act was insufficient to show the tort accrued in Montana as "the acts giving rise to the termination—both the [Law] Firm's decision to terminate him and all of Isakson's own actions and

efforts while working for the Texas-based [Law] Firm—either occurred in Texas or were directed toward operating a business solely in Texas." *Id.* at *5. Here, Timmer was terminated for conduct that occurred in Kentucky after that incident was investigated by a Maryland human resources firm, and that decision was made in Maryland and conveyed over the phone to Timmer from Maryland. (*See* Doc. 33-1 at ¶¶ 28–32.) Under Montana law, any alleged tort connected to Timmer's termination from his employment with Certified Contractors Supply accrued where the events that gave rise to his termination occurred—in Maryland. Therefore, Montana Rule 4(b)(1)(B) does not confer specific personal jurisdiction over Certified Contractors Supply.

### c.     **Contract of Insurance**

Specific jurisdiction could exist if Timmer's claims arose based on Certified Contractors Supply "contracting to insure any person, property, or risk located within Montana at the time of contracting." Mont. R. Civ. P. 4(b)(1)(D). Although the details are not clear, Timmer states in his response to the present motion that Certified Contractors Supply "is the party that purchased employers liability insurance through Travelers Casualty and Surety Group []of America." (Doc. 34 at 2–3.) Because this fact is neither pled nor sworn, it cannot be relied on in resolving the present motion. Additionally, Seigal states that the company "does not contract to insure any person in Montana." (Doc. 33-1 at ¶ 13.) Timmer

presents no evidence controverting this fact. Timmer therefore fails in his burden to show personal jurisdiction exists under this provision. *See Schwarzenegger*, 374 F.3d at 800.

### d.    Contract for Services

Specific jurisdiction could exist if Timmer's claims arose based on Certified Contractors Supply "entering into a contract for services to be rendered or for materials to be furnished in Montana by such person." Mont. R. Civ. P. 4(b)(1)(E). Here, the Second Amended Complaint alleges no specific conduct to give rise to the existence of personal jurisdiction under this provision. (*See generally* Doc. 24.) In his declaration, Siegal references the fact that during the COVID pandemic, Timmer conducted some trainings remotely over Zoom. (Doc. 33-1 at ¶ 21.) But that anomalous conduct, which occurred almost a decade into Timmer's employment, does not appear to reflect the general terms of Timmer's employment. Timmer's role at the company was to present "advice and guidance to [Certified Contractors Supply] members at conferences and events. None of those members conduct business in Montana and none of the conferences or events were held in Montana." (*Id.* ¶ 20.) Accordingly, the place of performance fell outside Montana. *See* Mont. Code Ann. § 25-2-121(1) (designating the proper venue in a contract dispute as the county where the defendant is located or "the principal activity was to take place"). Moreover, Timmer clarified at the January

16 hearing that his employment contract was negotiated and executed in California.

## B.    Due Process

As Timmer has failed to establish specific personal jurisdiction under Montana's long-arm statute, Certified Contractors Supply's motion to dismiss could be granted for that reason alone. *See Milky Whey*, 342 P.3d at 21.  However, even if Timmer had satisfied one of the above conditions, the exercise of personal jurisdiction over the company must also comport with due process. *Ford Motor Co.*, 592 U.S. at 358.  Montana applies federal constitutional law to determine whether the exercise of personal jurisdiction comports with the "traditional notions of fair play and substantial justice embodied in the due process clause." *B.T. Metal Works & Daryl Boyd, D.B.A. v. United Die & Mfg. Co.*, 100 P.3d 127, 133–34 (Mont. 2004) (applying the three-part test employed by the Ninth Circuit); *see King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 578–79 (9th Cir. 2011) (recognizing that Montana "permits the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process" (alteration omitted)).  Due process generally requires a defendant "have certain minimum contacts" with the forum state, *Int'l Shoe*, 326 U.S. at 316, ensuring that "a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by

interacting with other persons affiliated with the State, *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Put simply, a defendant must have "reached out beyond its home." *Ford Motor Co.*, 592 U.S. at 359 (internal quotation marks omitted). Examples of this include "exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (internal quotation marks and alteration omitted)). "[A] tort must involve the forum state itself[] and not just have some effect on a party who resides there." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

In considering the constitutionality of a court's exercise of personal jurisdiction, the Ninth Circuit employs the following three-prong test, for which an insufficient showing at any prong requires dismissal:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (internal quotation marks omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test[,]" and if

successful, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476–78).

While purposeful availment and direction are often confused, the correct test for a case sounding in tort is purposeful direction. *Id.* Purposeful direction usually involves evidence that the defendant directed its action toward the forum, "such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803. Purposeful direction "requires that the defendant have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 805 (internal quotation marks omitted). Here, the first prong is clear: Certified Contractors Supply called Timmer to terminate him. The third prong is equally clear: Certified Contractors Supply reasonably knew that Timmer would have suffered the effects of his termination in Montana, where he resided. Thus, the second prong is dispositive: whether Certified Contractors Supply expressly aimed its actions toward Montana.

Every connection between Montana and Certified Contractors Supply— including Timmer's occasional hosting of Zoom trainings and Certified Contractors Supply's furnishing of home office supplies—was the result of Timmer's unilateral decision to reside there, and all are the sort of "random, fortuitous, or attenuated contacts" that are insufficient to establish specific personal

jurisdiction. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted). Although he lives in Montana, Timmer's "injury is entirely personal to him and would follow him wherever he might choose to live or travel"; thus, "[t]he effects of [Certified Contractors Supply's] actions are . . . 'not connected to the forum State in a way that makes those effects a proper basis for jurisdiction.'" *Picot*, 780 F.3d at 1215 (quoting *Walden*, 571 U.S. at 290).

Because Timmer has neither established a prima facie showing of specific personal jurisdiction over Certified Contractors Supply under Montana's long-arm statute nor one that comports with due process, the Court lacks personal jurisdiction over the company. Dismissal is therefore appropriate.

## C.   Timmer's Ancillary Arguments

Nonetheless, Timmer raises several additional indirect challenges to the pending motion in his response. They do not change the outcome.

### 1.   Local Rules

Timmer first argues that Certified Contractor Supply's motion "fails to comply with L.R. 7.1(c)(1) as it is not[] a 'dispositive' motion as contemplated by the Rue [sic]." (Doc. 34 at 1.) Timmer provides no further explanation for this accusation. A brief review of Local Rule 7.1(c)(1) and Certified Contractors Supply's motion indicate, however, that Timmer believes he should have been contacted and permitted to lodge his objection before the motion was filed.

Indeed, Local Rule 7.1(c)(1) provides that such information must be included when filing a "non-dispositive motion," but implies that it may only be omitted from a "dispositive" motion.  Contrary to Timmer's interpretation, a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is a dispositive motion because it may result in dismissal of some or all claims against some or all defendants.  *Cf. Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016) (distinguishing "dispositive" motions based "on whether the motion at issue is more than tangentially related to the underlying cause of action" in the context of sealed documents); *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747 (9th Cir. 1990) (considering whether a motion is "dispositive of a claim or defense" under 28 U.S.C. § 636(b)(1)).  Because Certified Contractors Supply's motion is dispositive, Certified Contractors Supply was not required to notice Timmer's position on the motion in its filing.  *See* D. Mont. L.R. 7.1(c)(1).

### 2.    Conversion to Summary Judgment

Timmer further argues that because "the motion requests that the Court consider matters outside of the four corners of [the pleadings] it must be treated as a motion for summary judgment, which requires [the filing] party prepare and serve a 'Statement of Undisputed Facts,' pursuant to L.R. 56.1(a)1-4." (Doc. 34 at 1–2.)  Not so.  The Ninth Circuit has long held that courts may consider evidence presented in affidavits and declarations when determining personal jurisdiction on

a Rule 12(b)(2) motion. *Data Disc, Inc.*, 557 F.2d at 1284–85. Timmer had the opportunity to present any evidence he wanted considered and did so, as he testified at the January 16 hearing.

### 3.    Misstatements and Misrepresentations

Finally, Timmer argues that Certified Contractors Supply's motion "is inappropriate and based on numerous mis[]statements and misrepresentations of both fact and law." (Doc. 34 at 3.) He does not identify the specific misstatements or misrepresentations alluded to. In the absence of this information, it is impossible to weigh the merits of this allegation. Nonetheless, Timmer could have challenged Certified Contractors Supply's legal arguments in his briefing and its factual assertions through sworn affidavits or declarations. He did neither.

## II.    Motion for Default

Timmer requests that default be entered against Certified Contractors Network. (Doc. 36.) Indeed, following this Court's order directing Timmer to provide proof of service, he filed an "Affidavit of Service" indicating that Certified Contractors Network had been served with his original complaint on August 11, 2025. (*See* Doc. 18.) Because Certified Contractors Network did not answer or otherwise respond, Timmer could have sought a default. *See* Fed. R. Civ. P. 55. He did not do so. Instead, Timmer amended his complaint two times, (Docs. 20, 24); the final time omitting Certified Contractors Network as a named defendant,

(*see* Doc. 24). Because "an amended pleading supersedes the original pleading," *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019), Certified Contractors Network is no longer a named defendant in the case and default cannot be entered against it.

While the above analysis does not grapple with the possibility that Certified Contractors Network and Certified Contractors Supply are the same entity, default is not appropriate even if they are. "[T]he general rule is that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). If the two companies are one and the same, then Certified Contractors Network has appeared through Certified Contractors Supply and is litigating the case. Accordingly, Timmer's motion for default is denied.

## III.    Leave to Amend

Timmer further seeks leave to amend to file a Third Amended Complaint. (Doc. 37.) Although no brief has been filed in support of that motion, counsel indicated at the January 16 hearing that amendment is appropriate because Timmer intends to pursue a wider range of claims against a wider range of defendants, more consistent with what was alleged in this original complaint, (*see* Doc. 1). Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal

quotation marks omitted).  The Supreme Court has identified five factors relevant
to this inquiry: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party,
(4) futility of amendment, and (5) whether the plaintiff has previously amended its
complaint.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Of these, "the
consideration of prejudice to the opposing party carries the greatest weight."
*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th
Cir. 2013) (internal quotation marks omitted).  In the personal jurisdiction context,
"courts differ in their approach to awarding leave to amend."  *Supply Chain
Solutions, LLC v. Fun-Key Distribution, LLC*, 2025 WL 3248695, at *8 (C.D. Cal.
Sept. 24, 2025) (collecting cases).

### A.    Certified Contractors Supply

Here, many of the factors weigh against permitting further amendment.  This
case has already been pending for eight months and that delay can be attributed at
least in part to Timmer's decision not to serve the original complaint for three
months, his failure to respond to the motions to dismiss that were filed in the case,
and his subsequent amendments to his pleading.  Further, despite filing three
pleadings, Timmer cannot seem to figure out who he should sue and what causes
of action he should pursue.  His yo-yo approach to naming, dropping, and
substituting defendants may even rise to the level of being prejudicial.  Finally, and
most importantly, Timmer failed to present additional facts in response to the

23

pending motion that would alter the jurisdictional analysis. *See Doe v. Compania Panamena de Aviacion*, 2022 WL 1658229, at *2 (9th Cir. May 25, 2022) (affirming the dismissal of a complaint without leave to amend where the plaintiff did not "specify what 'additional allegations' she could make in favor of personal jurisdiction"). To the contrary, Certified Contractors Supply has presented substantial evidence that it has not engaged in any conduct that would give rise to personal jurisdiction in these circumstances. Accordingly, Timmer is not permitted to amend his complaint against Certified Contractors Supply or its putative d/b/a, Certified Contractors Network.

## B.    Cohen, Carrington, and Vantige Incorporated

The next question is whether Timmer should be permitted to amend his pleadings to add any other claims or defendants. As indicated above, Timmer's proposed Third Amended Complaint reintroduces most of the same defendants and causes of action contained in his Original Complaint. (*Compare* Doc. 1 *with* Doc. 37-1.) In essence, Timmer wants to sue any and all parties involved with his termination for defamation, wire fraud, mail fraud, wrongful discharge, breach of fiduciary duty, tortious bad faith, negligence, negligence per se, violation of 18 U.S.C. § 1983, tortious interference with prospective business relationships, and "other causes of action." (*See generally* Doc. 37-1.) Amendment is generally not warranted.

As it relates to Gary Cohen, Tim Carrington, and Vantige Incorporated, Timmer's proposed pleading contains no jurisdictional facts that would give this Court the power to exercise its authority over those defendants. To the contrary, Cohen is a resident of Florida, (Doc. 37-1 at ¶ 2), and Carrington and Vantige Incorporated "reside in states other than Montana, (*id.* ¶ 5). Timmer alleges no additional facts to show conduct by these defendants directed at the state of Montana. Thus, these defendants would be subject to dismissal for lack of personal jurisdiction for the same reason the Court is granting Certified Contractors Supply's motion to dismiss. Permitting Timmer leave to amend to allege further causes of action against them in this forum is therefore futile. Timmer's request for leave is therefore denied as to Cohen, Carrington, and Vantige Incorporated for this narrow jurisdictional reason.

## C.    Siegal and Jamsco

The next question is whether Timmer should be permitted to amend to reinstate his claims against Siegal or add claims against Jamsco. As discussed above, Rule 12(b)(2) allows a party to assert the defense of lack of personal jurisdiction by motion before filing a responsive pleading. In turn, Rule 12(h)(1) provides that the defense is waived by failing to bring such a motion or include it in a responsive pleading. Here, Siegal was named in Timmer's original complaint and, in response, filed a motion to dismiss under Rule 12(b)(6). (*See* Docs. 10,

11.)  However, Siegal did not invoke Rule 12(b)(2) and did not seek dismissal on personal jurisdiction grounds.  Siegal therefore waived the defense of personal jurisdiction.  *See Neifeld v. Steinberg*, 438 F.2d 423, 428 (9th Cir. 1971) ("Rule 12(b) provides a defendant with the option of raising jurisdictional defenses by motion or by answer.").  Because Siegal did not preserve this issue at the beginning of the litigation, that waiver extends to Timmer's amended pleadings.  *See id.* at 428 n.10 (explaining that if the defendant filed a Rule 12(b)(2) motion in response to a prior pleading "there would clearly have been no waiver").  Accordingly, Timmer's request to amend his complaint to pursue additional claims against Siegal does not suffer from the same jurisdictional futility as discussed above.   Likewise, because Jamsco has answered Timmer's operative pleading, (*see* Doc. 30), it also is not subject to the above jurisdictional concerns.  Accordingly, Timmer is permitted to amend his complaint as it relates to these two defendants.  However, Timmer will be given no further opportunities to amend.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

(1)    Certified Contractors Supply's motion to dismiss (Doc. 32) is GRANTED.  Certified Contractors Supply (and Certified Contractors Network) are DISMISSED WITH PREJUDICE from this action for lack of personal jurisdiction.

(2)    Timmer's motion for default (Doc. 36) is DENIED.

(3)    Timmer's motion for leave to file an amended pleading (Doc. 37) is

GRANTED in PART and DENIED in PART.  Consistent with the analysis above,

Timmer may file an amended pleading that names as defendants Scott Siegal and

Jamsco, Inc.  His request to add additional parties is denied.  If Timmer intends to

name Siegal as a defendant and/or add claims against Jamsco, he must file that

pleading within seven (7) days of the date of this Order and provide proof of

service within (3) days of doing so.  If no such pleading is filed, his case will

proceed against Jamsco on the single cause of action alleged in the Second

Amended Complaint, (Doc. 24).

DATED this 23rd day of January, 2026.

_____
Donald W. Molloy, District Judge
United States District Court